# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3075-23

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

A.R. and P.W., [1]

     Defendants,

_____

IN THE MATTER OF J.R.,
a minor,

     Appellant,

and

M.W., a minor.

_____

Argued June 3, 2025 – Decided September 3, 2025

---

[1] Initials and pseudonyms are used to protect the parties' confidentiality. R. 1:38-3(d)(12).

Before Judges Gilson, Bishop-Thompson, and Augostini.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FN-03-0139-23.

Meredith Alexis Pollock, Deputy Public Defender, argued the cause for minor-appellant J.R. (Jennifer N. Sellitti, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, of counsel; Jennifer M. Sullivan, Assistant Deputy Public Defender, of counsel and on the briefs; Neha Gogate, Assistant Deputy Public Defender, of counsel).

Leah A. Schmidt, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Leah A. Schmidt, on the briefs).

Randi Mandelbaum argued the cause for amici curiae Rutgers Child Advocacy Clinic, and Advocates for Children of New Jersey (Rutgers Child Advocacy Clinic, and Advocates for Children of New Jersey, attorneys; Randi Mandelbaum, Mary E. Coogan, and Jared M.H. Flanery, on the brief).

PER CURIAM

In this appeal, we are asked to decide whether the family court has jurisdiction to direct how the Division of Child Protection and Permanency (the Division) uses a child's benefits after the Division has been approved by the

Social Security Administration (SSA) as a child's payee for the Old-Age, Survivors, and Disability Insurance (OASDI) benefits.

After the Division was granted custody of sixteen-year-old J.R. (Junie), the family court, in a December 20, 2023 order, permitted the Division to apply to become Junie's representative payee for OASDI benefits and authorized the Division "to use those benefits" consistent with state and federal law. Junie's attorney (the Law Guardian) sought reconsideration of that decision. On April 10, 2024, the court denied the Law Guardian's reconsideration of the December 20, 2023 order, determining that it lacked jurisdiction to direct the Division's use of Junie's OASDI benefits. The following day, the court issued a written decision supporting its ruling. The court concluded that Junie was required to challenge the Division's application and designation as her payee through the process set forth in Title II of the Social Security Act (the SS Act) and its regulations. 42 U.S.C. §§ 401-434; 20 C.F.R. § 404. Junie appeals from the orders entered on December 20, 2023 and April 10, 2024.

On leave granted, Junie contends the family court erred by (1) determining the Division's use of Junie's OASDI benefits complied with state law; (2) finding that the Division's use of Junie's benefits to reimburse the State for Junie's

3

maintenance does not violate state law; and (3) ignoring Junie's request for a hearing to resolve factual issues.

We granted leave to Rutgers Child Advocacy Clinic and Advocates for Children of New Jersey to file an amicus brief in support of Junie's contentions.

Based on our de novo review, we hold that the family court lacked jurisdiction to hear Junie's claims because Junie failed to administratively challenge how her federal benefits were being used in accordance with the SS Act and its federal regulations. We further hold that state law does not presently preclude the Division from using Junie's benefits for her maintenance consistent with federal law. Because we affirm on these grounds, we need not reach the equal protection challenge to the Division's policy. Accordingly, we affirm the April 10, 2024 order.

## I.

We discern the largely undisputed facts from the motion record. In 2016, Junie's father, H.R., died. As a result of his death, Junie, born in 2007, began collecting OASDI benefits of $1,084 monthly through the SSA. At the time the Division first became involved with the family, Junie's mother, A.R. (Allison) was appointed as Junie's representative payee. 42 U.S.C. §405(j)(1)(A); 20 C.F.R. § 404.2010(b).

On June 13, 2023, the Division removed Junie and her sister, M.W. (Mary) from Allison's custody due to allegations of substance misuse, mental health issues, and physical abuse.[2] Junie was placed in a non-relative resource home.

On September 11, 2023, the court ordered Allison "to conserve all SSA survivor[] benefits" Junie received in a separate account and barred Allison from withdrawing funds from that account. Additionally, the court barred the Division from applying to become Junie's representative payee "without notice to the court and counsel."

On September 28, 2023, the Division advised the court and counsel of its intent to apply to become Junie's representative payee of her OASDI benefits. The Law Guardian objected, and instead, supported Junie's aunt, S.W. (Sally), who was being considered as a placement resource, as the substitute payee. On September 28, 2023, the court ordered:

> [the] Division shall be designated as the representative payee for [Junie's] SS[A] benefits. The Division shall establish a trust account for said funds with the proviso the funds shall not be utilized to satisfy the Division's obligation to the [resource parent]. Funds may be utilized for other reasons with the Division providing a detailed accounting to the [Law Guardian] monthly.

---

[2] Mary was subsequently placed with her father, P.W. Neither Allison, P.W., nor Mary are parties to this appeal.

A-3075-23

The Division filed a motion for reconsideration of the portion of the September 28, 2023 order that barred the Division from using the benefits "to satisfy the Division's obligation to the [resource parent]."

On December 8, 2023, the court conducted oral argument on the motion for reconsideration. The Division stated that it had not yet applied to become Junie's representative payee. Junie opposed the Division's motion, arguing, in part, that New Jersey law requires the State to pay the cost of Junie's maintenance while she was in out-of-home care and did not authorize the use of Junie's OASDI benefits to reimburse the Division for her care. The court deferred its decision.

On December 20, 2023, the court granted reconsideration, dissolving the restraints, and vacating the portion of its prior order prohibiting the Division from using Junie's benefits to reimburse the State for the costs of Junie's maintenance while in the Division's care. The court again authorized the Division to apply to become Junie's representative payee. Further, the court permitted the Division "to use those benefits as authorized by state and federal law" and "provide the [L]aw [G]uardian with the ledger of the funds [expended and] maintained by the Division on a bi-monthly basis." The court denied

6

Junie's request for a stay but ordered the Division to "refrain from applying to be [Junie's] representative payee for two weeks."

On January 2, 2024, the Division advised the court, the Law Guardian, and Junie that it had applied to be Junie's representative payee on October 6, 2023. In fact, on October 30, 2023, the SSA appointed the Division to serve as Junie's representative payee and began disbursing the benefits to the Division in November 2023. The Division explained that the filing of the application had not been communicated to the Division's attorney until after the December 20, 2023 hearing.

On February 23, 2024, Junie filed for reconsideration of the December 20, 2023 order, requesting the return of the benefits collected, and a plenary hearing to determine whether the Division should assist Sally in becoming Junie's representative payee. Separately, the Legislature had recently amended the Child Placement Bill of Rights (CPBR), granting children in out-of-home care with the right

> [t]o be notified of property and benefits to which the child is the owner or beneficiary at the time of the child's placement outside of the child's home, if known by the Department of Children and Families [(DCF)][3] at the time of the child's placement, or to be promptly

---

[3] As explained in the Division's brief, "[t]he Division operates under the auspices of [DCF]."

notified upon the [DCF] becoming aware of such property and benefits, including, but not limited to, federal Social Security benefits; to be informed of the department's intention to file for federal benefits on the child's behalf; and to have an opportunity to review the contents of any application form for federal benefits filed on the child's behalf prior to submission.

[N.J.S.A. 9:6B-4(z).]

The Division acknowledged that the amendment provided children, like Junie, with the right to notice of the Division's intent to be appointed as representative payee. However, it maintained that the family court lacked jurisdiction to direct an institutional payee, such as the Division, in the management or use of those benefits.

On April 10, 2024, the court denied Junie's motion for reconsideration, concluding that it did "not have jurisdiction to determine whether the Division has the authority to use the benefits of the child for payments to the resource parents . . . ." The court subsequently issued a written statement of reasons on April 11, 2024, determining that the Legislature only provided a child with a right to notice of the Division's intent to file a representative payee application. The court reasoned that because the Legislature did not expressly provide the court with oversight authority as to the agency's use of the OASDI benefits, this field was preempted by federal law.

8

Pursuant to the accounting ledgers the Division provided to the Law Guardian in accordance with prior orders, the Division redeposited the November 2023 maintenance withdrawal, canceled the December 2023 and January 2024 maintenance reimbursements, and conserved Junie's benefits between November 2023 and January 2024.

The Division resumed the maintenance withdrawals in February 2024 until June 1, 2024, when the Division modified its benefit policy.[4]  The Division represented that on June 1, 2024, DCF amended its policy concerning federal benefits to prospectively conserve the OASDI benefits of all children in its custody.  The Law Guardian pointed out, however, that from November 8, 2023 through July 20, 2024, Junie received $10,697.75 in OASDI benefits, and $7,041.75 was withdrawn by the Division to reimburse Junie's maintenance costs.

Junie moved for leave to appeal the family court's December 20, 2023, and April 10, 2024 orders.[5]  On June 6, 2024, we granted leave to appeal.  Junie

---

[4]  On February 6, 2025, we granted the Division's motion to supplement the record, which consisted of a certification of Nicole Rodriguez, Manager 2, Fiscal Resources in the DCF, Office of Revenue, Financial Reporting, setting forth the DCF's new federal benefits policy.

[5]  Junie also sought to appeal from the April 11, 2024 decision, but appeals are from orders and not supporting decisions.  R. 2:2-3.

contends that the family court erred in ruling that it lacked jurisdiction to oversee the Division's use of Junie's OASDI benefits. The Law Guardian further argues that New Jersey law does not permit the Division to use Junie's benefits to reimburse the State for Junie's maintenance while in out-of-home care, and the family court should have conducted a plenary hearing to resolve factual issues before issuing its ruling. Amici curiae, Rutgers Child Advocacy Clinic and Advocates for Children of New Jersey, support Junie's positions and further contend that the Division's use of Junie's benefits also violates New Jersey's Constitution and its parens patriae obligations to children in the agency's care and custody.

In opposition, the Division asserts the family court correctly determined it lacked jurisdiction to make representative payee appointments or adjudicate claims of benefit misuse because those decisions are governed by the SS Act and regulations promulgated under the SS Act. Therefore, the Division contends Junie's claims are preempted by federal law, and any challenge to either the appointment of Junie's representative payee or the alleged misuse of her benefits must be addressed under the SS Act.

II.

We review a trial court's statutory interpretation de novo. State v. Frank, 445 N.J. Super. 98, 105 (App. Div. 2016). We also review a court's determination on subject matter jurisdiction de novo. AmeriCare Emergency Med. Serv., Inc. v. City of Orange Twp., 463 N.J. Super. 562, 570 (App. Div. 2020).

In contrast, a trial court's decision on a motion for reconsideration is reviewed for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). Likewise, a trial court's denial of a plenary hearing is also reviewed for an abuse of discretion. See Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015).

We begin by reviewing the applicable federal and state statutes, regulations, and agency policies that provide the legal framework for our analysis.

A. Social Security Act and Regulations.

The federal benefits Junie receives, which are at the center of this appeal, are paid in accordance with the SS Act. 42 U.S.C. §§ 401-434. Those monies are referred to as OASDI benefits "for elderly and disabled workers, and their survivors and dependents." Wash. State Dep't of Soc. & Health Servs. v.

11

Guardianship Est. of Keffeler, 537 U.S. 371, 375 (2003). A child may receive these benefits if "the minor is unmarried and was dependent on a wage earner entitled to OASDI benefits." Ibid. (citing 42 U.S.C. § 402(d)). According to the federal regulations promulgated to effectuate the SS Act, a child is entitled to OASDI benefits "on the earnings record of an insured person . . . who has died" if the child is the insured decedent's child, was dependent upon decedent, unmarried, under the age of eighteen or permanently disabled, and has applied for the benefit. 20 C.F.R. § 404.350(a).

Congress has given the SSA Commissioner full and exclusive authority to make payee appointments and adjudicate allegations of misuse of benefits. 42 U.S.C. § 405(a). Moreover, a comprehensive statutory and regulatory scheme has been enacted as "necessary or appropriate" to carry out Congress' intent. Ibid.

These benefits may be paid directly to a beneficiary, or payment may be made "'for [a beneficiary's] use and benefit' to another individual or entity as the beneficiary's 'representative payee.'" Keffeler, 537 U.S. at 376 (alteration in original) (quoting 42 U.S.C. §§ 405(j)(1)(A), 1383(a)(2)(ii)(1)). Priority is given to a child's parent, legal guardian, or relative when considering the appointment of a payee. Ibid. (citing 20 C.F.R. §§ 404.2021(b), 416.621(b)).

12

For a child under the age of eighteen, an authorized social service agency or custodial institution may be appointed as payee, but "such entities come last in order of preference." Ibid. (citing 20 C.F.R. §§ 404.2021(b)(7), 416.621(b)(7)). "Whoever the appointee may be, the Commissioner of Social Security must be satisfied that the particular appointment is 'in the interest of' the beneficiary." Ibid. (quoting 42 U.S.C. §§ 405(j)(2)(A)(ii), 1383(a)(2)(B)(i)(II)). Moreover, before finalizing an appointment, the Commissioner "must also attempt to identify any other potential representative payee whose appointment may be preferred." Id. at 376 n.1 (citing 42 U.S.C. §§ 405(j)(2)(A)(ii), 1383(a)(2)(B)(i)(II)); see 20 C.F.R. §§ 404.2020, 416.620.

Regulations govern a representative payee's use of the benefits. A representative payee has the responsibility to use the benefits "in a manner and for the purposes he or she determines, under the guidelines . . . to be in [the beneficiary's] best interests." 20 C.F.R. 404.2035(a). The regulations specifically allow payments to be used for "the beneficiary's current maintenance." 20 C.F.R. 404.2040(a)(1). "Current maintenance" is defined as including "cost incurred in obtaining food, shelter, clothing, medical care, and personal comfort items." Ibid.

A-3075-23

The SS Act also provides a level of accountability by requiring a representative payee to provide an annual accounting. 42 U.S.C. §§ 405(j)(3)(A), 1383(a)(2)(C)(i). Where the representative payee "is a State institution, . . . the Commissioner of Social Security shall establish a system of accountability monitoring for institutions in each State." 42 U.S.C. 405(j)(3)(B). If, however, the Commissioner "has reason to believe that the person receiving such payments is misusing [] payments," a report may be ordered "at any time." 42 U.S.C. § 405(j)(3)(E). If it is determined that a payee has misused benefits, the Commissioner is mandated to "promptly revoke" payment to the offending payee. 42 U.S.C. § 405(j)(1)(A).

The SS Act defines misuse broadly as occurring "in any case in which the representative payee receives payment under this [subchapter] for the use and benefit of another person and converts such payment, or any part thereof, to a use other than for the use and benefit of such other person . . . ." 42 U.S.C. § 405(j)(9). An individual dissatisfied with "a determination by the Commissioner . . . to certify payment of [an] individual's benefit" or with the "designation of" their payee appointment is entitled to a hearing and further judicial review in a United States District Court. 42 U.S.C. § 405(j)(2)(E)(i). Once a decision is

14

made by the Commissioner, it is "binding upon all individuals who were parties to such hearing." 42 U.S.C. § 405(c)(2)(H). Moreover, the SS Act provides:

> [n]o findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under [U.S.C. § 1331 or 1346] to recover on any claim arising under this title.
>
> [42 U.S.C. § 405(h).]

### B. New Jersey Child Welfare Laws.

The Division removed Junie from the custody of her mother and was granted continued care, custody, and supervision of Junie to protect her welfare. N.J.S.A. 30:4C-12. When the court approved the Division's continued care and custody of Junie, New Jersey's child welfare laws provided Junie with certain rights in furtherance of her "health, safety and physical and psychological welfare[.]" N.J.S.A. 9:6B-4.

While in the Division's care, the agency is responsible for ensuring and protecting those rights and providing Junie with services to support her best interests. N.J. Div. of Child Prot. & Permanency v. K.N., 435 N.J. Super. 16, 26 (App. Div. 2014); see also N.J.S.A. 30:4C-2(a), (f); N.J.S.A. 30:4C-22. The Division is required to pay the cost of Junie's maintenance while she is in the

15

Division's care.  N.J.S.A. 30:4C-27.  Those costs are to be "borne" by the State and County.  N.J.S.A. 30:4C-30.  Additionally, N.J.S.A. 30:4C-29 provides that, the "payments for maintenance shall be made by the Division" and authorizes the Division to receive funds from the state treasury and county treasurer for these purposes.  N.J.S.A. 30:4C-29.

Moreover, in granting the Division's application for care, custody, and supervision, the family court, "imbued with its traditional parens patriae responsibility" derived from common law, provides oversight of the Division's efforts to effectuate permanency for Junie and support her best interests.  K.N., 435 N.J. Super. at 32.  The historical basis of the court's parens patriae authority derives from "the power of the state to act in loco parentis for the purpose of protecting the property interests and the person of the child."  In re Gault, 387 U.S. 1, 16 (1967).

As the state agency responsible for the well-being of children in its care and custody, the DCF has the power to

> [i]ssue such reasonable rules and regulations as may be necessary for the purpose of carrying into effect the meaning of this act, which rules and regulations shall be binding so far as they are consistent with such purpose[.]
>
> [N.J.S.A. 30:4C-4(h).]

A-3075-23

DCF has established a federal benefit policy and asserts that, under this policy, "it routinely files an application with the SSA to become the representative payee of eligible children in its custody . . . ."  At the time Junie first came into its care, DCF, once appointed as representative payee, followed that routine and used Junie's benefits, consistent with the requirements of the SS Act, to pay the cost of Junie's maintenance while in out-of-home care.

Recent changes in New Jersey law and DCF policy have modified that past practice.  Effective January 2024, the Legislature amended the CPBR, to require prompt notification of DCF's application to become a child's representative payee.  N.J.S.A. 9:6B-4(z).  When this amendment took effect, the Division notified Junie that it had applied and became her representative payee in October 2023.

Effective June 1, 2024, the Division's federal benefit policy changed.[6]  In accordance with the policy change, the Division has represented that it has begun to conserve Junie's OASDI payments.

---

[6]  As previously noted, on February 6, 2025, we granted the Division's motion to supplement the record with a certification setting forth its new federal benefit policy.  At oral argument, the Division's attorney confirmed that the new policy had not been incorporated in written form and has not yet been issued as written regulations.

Amici contend that the Division's practice of using a child's OASDI benefits to reimburse itself for the child's maintenance violates Article I, paragraph 1 of the New Jersey Constitution. Both the United States and New Jersey Constitutions recognize the right to "property" that is subject to due process protections. J.E. ex rel. G.E. v. State, 131 N.J. 552, 563 (1993) (citing U.S. Const. amend. XIV, § 1; N.J. Const. art. I, ¶ 1). While the New Jersey Constitution "nowhere expressly states that every person shall be entitled to the equal protection of the laws," it nevertheless "protect[s] against injustice and against the unequal treatment of those who should be treated alike." Lewis v. Harris, 188 N.J. 415, 442 (2006) (alteration in original) (first citing Sojourner A. v. N.J. Dep't of Hum. Servs., 177 N.J. 318, 332 (2003); and then quoting Greenberg v. Kimmelman, 99 N.J. 552, 568 (1985)).

"When a statute is challenged on the ground that it does not apply evenhandedly to similarly situated people, our equal protection jurisprudence requires that the legislation, in distinguishing between two classes of people, bear a substantial relationship to a legitimate governmental purpose." Id. at 443. (2006). In analyzing an equal protection claim, our Court has established a three-factor test: (1) the nature of the right at stake; (2) the extent to which the

A-3075-23

challenged statutory scheme restricts that right; and (3) the public need for the statutory restriction. Ibid. (citing Greenberg, 99 N.J. at 567).

III.

A.

Junie contends the family court erred in concluding that it lacked jurisdiction to address her claims and was federally preempted to prohibit the Division's use of her federal benefits and direct the Division to return those funds. Specifically, Junie asserts the court legally erred in concluding that 42 U.S.C. 405(h) evinced an intent by Congress to "preempt state jurisdiction and fully occupy the field."

Before reaching the issue of preemption, we address Junie's failure to exhaust her administrative remedies under the SS Act. The obligation to exhaust administrative remedies is a prerequisite to seeking court intervention. See Ortiz v. N.J. Dep't of Corr., 406 N.J. Super. 63, 69 (App. Div. 2009) (quoting Garrow v. Elizabeth Gen. Hosp. & Dispensary, 79 N.J. 549, 559 (1979)). "Th[is] obligation to exhaust 'administrative remedies before resort[ing] to the courts is a firmly embedded judicial principle.'" Ibid. (quoting Garrow, 79 N.J. at 559).

The SS Act's detailed and specific statutory scheme addresses the appointment of an organization or individual to serve as a beneficiary of OASDI

and provides a process of review of such determinations. A review of the Commissioner's final decision may be challenged by filing an action brought in the federal District Court. 42 U.S.C. § 405(g).

Indeed, 20 C.F.R. § 404.900(a) sets forth the administrative review process the SSA follows in determining rights under the SS Act, beginning with the Commissioner's initial determination, the right to reconsideration of the initial appointment decision, the right to a hearing before an administrative law judge, the right to appeal the decision to the Appeals Council, and the right to a federal court review. Initial determinations include determinations about whether to make payments to a representative payee, who will be a representative payee, and whether the SSA was "negligent in investigating or monitoring or failing to investigate or monitor your representative payee, which resulted in the misuse of benefits by your representative payee." 20 C.F.R. 404.902(o), (q), and (x).

Once a representative payee is appointed, the regulations establish extensive directives regarding the responsibilities of representative payees. 20 C.F.R. §§ 404.2001-2065. In the event of any alleged misuse of benefits by a representative payee, the SS Act also provides a process by which a beneficiary

20

may seek review and redress for federal benefit misuse. 42 U.S.C. § 405(j)(2)(E).

The recent amendment to the CPBR provides a child in out-of-home care with notice of the Division's intent to apply to become their representative payee and an opportunity to review the agency's payee application. N.J.S.A. 9:6B-4(z). Although the amendment did not further restrict the Division's use of those benefits, the notice provision provides a child with an opportunity to exercise its administrative remedies.

The family court found similarities and guidance from the Maryland case, In re Ryan W., 76 A.3d 1049, 1069-70 (Md. 2013). As with the New Jersey CPBR's notice requirement, the Maryland court held that custodial agencies must directly notify the child's appointed counsel of its payee application and appointment. Ibid. The family court noted that the Maryland [c]ourt "reaffirmed its determination that family courts, . . . do[] not have jurisdiction to hear and decide disputes between foster children and their agency representative payees." The Maryland court did not interpret Maryland's notice requirement as establishing subject matter jurisdiction to the Maryland court "to direct the allocation of OASDI benefits." Id. at 1070. Likewise, the CPBR amendment provides New Jersey's children who live in out-of-home care with

notice of the Division's payee application so they may timely pursue federal administrative and statutory remedies under the SS Act.

Here, once advised of the Division's intent to file for appointment as Junie's representative payee, Junie did not challenge the appointment through the SSA or seek review of the Commissioner's decision to appoint the Division through the SS Act's administrative remedies. Moreover, Sally did not request that she be considered as an alternative representative payee.

Nor did Junie file for administrative review of the Division's use of her benefits to reimburse itself for her care. Had Junie exhausted her administrative remedies, then she would have had further recourse to challenge the Division's use of those benefits by seeking judicial review in federal district court. Junie failed to exhaust the available administrative remedies. Therefore, we hold that because Junie did not exhaust these administrative remedies, the family court lacked jurisdiction to further address Junie's claims.

B.

The state statutes Junie relies on—specifically, N.J.S.A. 30:4C-27, which requires the State to bear the cost of maintenance for children in its custody, and recently amended N.J.S.A. 30:4C-29.1, the Equitable Outcomes in Child Support Collection Act (Child Support Act), discussed further in detail below,

22

which previously permitted the agency to pursue reimbursement for a child's maintenance obligation from "any legally responsible person of the child" and not from the child directly—do not conflict with the SS Act's provisions. These statutes do not prohibit the Division from using the child's OASDI benefits to support the cost of the child's maintenance while in out-of-home care. Nor does the SS Act itself prohibit an agency from using a child's survivor benefits to reimburse itself for the child's maintenance. Moreover, the federal and state statutory schemes have long co-existed.

Amici point out that the recent legislative enactment of the Child Support Act, amending N.J.S.A. 30:4C-29.1, eliminates the ability of the State to collect child support for children in its custody. As a result, amici contend, only children receiving Social Security benefits will be reimbursing the Division for maintenance costs. This result, amici argue, is both contrary to state law and "grossly unfair."

The Legislature's recent enactment of the Child Support Act addresses child support actions against parents, guardians and other "legally responsible persons." This legislative change, however, does not alter the Division's authority under N.J.S.A. 30:4C-22, which provides it with "full and complete . . . custody and control" over "the person and property of children in its custody

23

or care," nor did the recent legislative changes expressly restrict the Division's use of a child's federal benefits. In that regard, there is nothing to suggest in any of these state child welfare laws that "compliance with both federal and state [law]" would be physically impossible. In re Reglan Litig., 226 N.J. 315, 329 (2016) (quoting Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992)).

In fact, other states have enacted specific statutes restricting a child welfare agency's use of a child's federal benefits when the institution becomes the representative payee. See 20 Ill. Comp. Stat. 505/5.46(d) (2025); Md. Code Ann., Fam. Law § 5-527.1(c) (2025); Ariz. Rev. Stat. Ann. § 8-468 (2025); D.C. Code § 4-1303.12(c)(1) (2025); and Conn. Gen. Stat. § 17a-15d (2025). These changes have come by way of legislative enactments and not judicial pronouncements. Presently, New Jersey has no comparable statute. As the family court correctly noted, the Law Guardian's request for the court to limit the Division's use of the child's federal benefits is not provided for in a statute.

We note, however, that there is a bill currently pending before the Legislature that would prohibit DCF from "utilizing any portion of the child's property or benefits, including federal Social Security benefits, to offset the State's cost for the child's maintenance." S. 3153/A. 4543 § 1(a) (2024). The

bill would allow DCF, if acting as representative payee, to use benefits "for the child's unmet needs beyond the amount that the State is obligated, required, or agrees to pay," but otherwise, benefits must be deposited in a bank account "for conservation or use in the child's best interests, consistent with federal and State asset and resource limits as applicable." S. 3153/A. 4543 § 1(b)-(c) (2024). Therefore, the relief sought by the Law Guardian is most appropriately left to the Legislature to address.

For the first time on appeal, the Law Guardian argues that Junie's OASDI benefits are part of a class of funds excluded by the Legislature from those which the Division is permitted to use. Specifically, Junie contends the OASDI benefits fall within the ambit of N.J.S.A. 30:4C-22, which allows the Division:

> to apply funds, other than earned income or the corpus of any trust, devise or intestate share, or the proceeds of an insurance contract or a personal injury award which a court specifically awards to a child to make the child whole as a result of an injury, of any child under its custody or care or any ward when the child is in a resource family home against expenditures for the maintenance of such child under its custody or care or ward when the child is in a resource family home.

Junie contends the funds she receives are designated by the SS Act for survivor benefits within the "Federal Old-Age and Survivors Insurance Trust Fund" pursuant to 42 U.S.C. 401(a). Therefore, she argues, until such funds were

25

withdrawn by the Division, they constituted the "corpus" of a trust and are excluded under N.J.S.A. 30:4C-22 from being a source of funding for the Division to repay its maintenance fund. Because this argument was not raised before the family court, thereby depriving the court of an opportunity to consider it, we decline to address it on appeal. R. 2:10-2.

## C.

We next turn to the assertion that the family court's inherent equitable parens patriae authority permits the family court to override the Division's policy of using a child's benefits towards its maintenance while in out-of-home care. New Jersey has long recognized its duty and "parens patriae responsibility to protect the welfare of children." In re Guardianship of J.C., 129 N.J. 1, 10 (1992). Our Supreme Court has held that "the state has an obligation, under the parens patriae doctrine, to intervene where it is necessary to prevent harm to a child." Fawzy v. Fawzy, 199 N.J. 456, 474-75 (2009) (citing Moriarty v. Bradt, 177 N.J. 84, 102-03 (2003)).

However, "[t]he doctrine of parens patriae has its roots in equity, and it is well-established that 'equity follows the law,' particularly where a statute is involved." Impink ex rel. Baldi v. Reynes, 396 N.J. Super. 553, 561 (App. Div. 2007) (first citing Kinsella v. Kinsella, 150 N.J. 276, 318 (1997); and then

quoting <u>Shinn v. Schaal</u>, 394 N.J. Super. 55, 68 (App. Div. 2007)).  Moreover, as we recently recognized, the "best-interest analysis is not appropriate in the presence of a specific, legislative mandate" directing a beneficiary of the Division of Developmental Disabilities services to reimburse it after she received a large inheritance.  <u>In re G.W.</u>, ___ N.J. Super. ___, ___ (App. Div. 2025) (slip op. at 12).

In the face of a specific statutory and regulatory scheme, which provides for administrative remedies, the parens patriae power of the court may be superseded.  <u>Id.</u> at ___ (slip op. at 12).  Thus, the family court's parens patriae authority does not confer jurisdiction particularly in light of Junie's failure to exhaust her administrative remedies.

Nonetheless, the family court, when faced with an issue concerning a child's federal benefits, is not without authority to protect the child's interests.  Indeed, the court retains the authority to appoint an attorney or guardian ad litem to pursue the child's administrative remedies and once exhausted, judicial review in federal court pursuant to the SS Act's statutory remedies.  Moreover, the family court retains authority to ensure that a child receives prompt notification of the Division's application to become the child's representative payee pursuant to the recent amendment to the CPBR.  N.J.S.A. 9:6B-4(z).

D.

"The preemption doctrine, rooted in the second clause of article VI of the United States Constitution, requires that when the mandates of federal law and state law are not consistent, the state law must yield." Feldman v. Lederle Labs., a Div. of Am. Cyanamid Co., 125 N.J. 117, 133-34 (1991). Because Junie did not exhaust her federal administrative remedies, we need not reach the preemption issue. However, none of the statutes relied upon by Junie currently conflict with the federal SS Act or its regulations. Nor is there anything to suggest that state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" concerning OASDI benefits. In re Reglan Litig., 226 N.J. at 329 (quoting Gade, 505 U.S. at 98). Therefore, because there is no New Jersey state statute that conflicts with the federal statutes or regulations, there is no state statute to preempt.

Indeed, the SS Act vests within the appointed representative payee broad discretion to use the benefits consistent with the beneficiary's best interests, which may include maintenance. Moreover, Congress has not expressly preempted the states from legislating in this area of the law.

E.

Amici contend that the New Jersey Constitution prohibits the Division from using a child's OASDI benefits to reimburse the State for the child's maintenance while in out-of-home care. Amici further contend that the recently enacted legislation, signed by Governor Murphy on January 30, 2025, which eliminates the State's ability to collect child support from legally responsible adults for children in the State's custody, results in children who receive social security benefits being the only ones responsible for reimbursing the agency for the cost of their maintenance. The Division responds by representing that it prospectively amended its federal benefit policy in advance of this legislative change and asserts that at no time has its federal benefit policy resulted in a constitutional violation because it has consistently treated all beneficiaries under the SS Act equally.

Having determined that the family court did not have jurisdiction to address Junie's claims because she failed to exhaust her administrative remedies, we need not reach the constitutional challenge of equal protection raised by amici. See e.g., Townsend v. Swank, 404 U.S. 282, 285 (1971) (finding of preemption avoided reaching equal protection issue); Ass'n of N.J. Rifle & Pistol

Clubs, Inc. v. City of Jersey City, 402 N.J. Super. 650, 659 (App. Div. 2008), appeal dismissed as moot, 201 N.J. 444 (2010).

F.

Finally, Junie contends the family court erred by not conducting a hearing to "hear [] relevant testimony and consider evidence and decide whether [the Division] should assist [Junie] or her aunt in becoming representative payee." The issue before the family court centered on a legal question and not a factual dispute. "[A] plenary hearing is only required if there is a genuine, material and legitimate factual dispute." Segal v. Lynch, 211 N.J. 230, 264-65 (2012); see also Lepis v. Lepis, 83 N.J. 139, 159 (1980) (holding the moving "party must clearly demonstrate the existence of a genuine issue as to a material fact before a hearing is necessary" because "[w]ithout such a standard, courts would be obligated to hold hearings on every modification application"). Therefore, the movant must demonstrate the necessity of a plenary hearing. Hand v. Hand, 391 N.J. Super. 102, 106 (App. Div. 2007).

Here, Junie did not present any genuine issue of material fact requiring a hearing. Therefore, we discern no abuse of discretion by the family court in not conducting a plenary hearing.

30

A-3075-23

In sum, we conclude that the family court lacked jurisdiction to address Junie's claims concerning her federal benefits because Junie failed to exhaust the SS Act's administrative remedies.  We further hold that nothing presently in state law precludes the Division from using Junie's benefits for her maintenance consistent with federal law.  Therefore, we discern no abuse of discretion in the family court's denial of reconsideration of the December 20, 2023 order.

However, a child in out-of-home care is now required by state law to be notified of the Division's application to become the child's representative payee and to review the application the Division files so that a child can exercise his or her rights to review under the SS Act.  N.J.S.A. 9:6B-4(z).  The enforcement of these notice requirements is within the family court's jurisdiction.  Moreover, the family court is empowered to appoint an attorney or guardian ad litem to pursue a child's administrative or judicial remedies under the SS Act.

To the extent we have not addressed any of Junie's remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion.  See R. 2:11-3(e)(1)(E).

The April 10, 2024 order is affirmed, and the matter is remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

31

A-3075-23